## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Oct 03 2016, 8:47 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANTS

David W. Stone IV
Stone Law Office & Legal Research
Anderson, Indiana

Michael W. Phelps
Rom Byron
Nunn Law Office
Bloomington, Indiana

ATTORNEY FOR APPELLEE

Matthew J. Jankowski
Kopka Pinkus Dolin PC
Carmel, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Cynthia Brown and
Gregory Brown,

*Appellants-Plaintiffs,*

v.

The Boeing Company,

*Appellee-Defendant*

October 3, 2016

Court of Appeals Case No.
49A04-1601-CT-177

Appeal from the Marion Superior Court

The Honorable Heather Welch, Judge
The Honorable Therese Hannah, Judge Pro Tempore

Trial Court Cause No.
49D01-1303-CT-8974

**Baker, Judge.**

[1] Cynthia and Gregory Brown sued The Boeing Company (Boeing) for negligence after Cynthia was injured in a car accident caused by a Boeing employee. The Browns appeal the jury verdict entered in favor of Boeing, raising two arguments on appeal: (1) the trial court erroneously excluded evidence regarding alleged bias of a Boeing expert witness; and (2) the trial court erroneously excluded evidence that Cynthia was no longer able to continue working with special needs children. Finding no error, we affirm.

## Facts

[2] On April 27, 2012, Cynthia was driving a vehicle in Indianapolis and was stopped at a traffic signal. Another vehicle, operated by Eric Haugse, struck the rear of Cynthia's vehicle. Cynthia incurred ongoing pain in her left shoulder, left arm, lower back, right leg, and right ankle, as a result of the accident.

[3] On March 5, 2013, the Browns filed a complaint against Haugse and Boeing, seeking to recover damages as a result of the accident. Haugse was a Boeing employee, and Boeing eventually stipulated that Haugse was working in the course and scope of his employment[1] and that Haugse's negligence caused the accident.

[4] A jury trial on the issue of damages took place from November 17 through 19, 2015. At some point during the trial, Boeing filed a motion in limine, seeking

---

[1] After Boeing conceded that Haugse was working in the course and scope of his employment, Haugse was dismissed from the lawsuit.

to prohibit the Browns from asking certain questions of Boeing's expert witness, Dr. Alfred Bowles. Boeing also sought to exclude a number of documents that the Browns intended to submit into evidence. The trial court granted the motion.

[5] Before the trial began, the Browns stipulated that Cynthia's claim for lost income had been withdrawn. At trial, however, the Browns attempted to introduce evidence that Cynthia was no longer able to teach special needs children as a result of her injuries. Boeing objected to the evidence, arguing that it was confusing and irrelevant as her claim for lost income had been withdrawn. The Browns argued that it was relevant because it showed the emotional loss she sustained by no longer being able to do the work she loved. The trial court sustained Boeing's objection and excluded the evidence. On November 19, 2015, the jury awarded Cynthia $25,000 and awarded Gregory $0 for his claim of loss of consortium. The Browns now appeal.

## Discussion and Decision

[6] Both of the arguments raised by the Browns on appeal amount to a contention that the trial court erroneously excluded evidence. Decisions to admit or exclude evidence are within the sound discretion of the trial court, and we will reverse only where the ruling is against the logic and effect of the facts and circumstances before the court. *Flores v. Gutierrez*, 951 N.E.2d 632, 637 (Ind. Ct. App. 2011).

# I. Expert Witness

[7] First, the Browns contend that the trial court erred by excluding testimony and documents related to Dr. Bowles. The specific evidence sought to be admitted was as follows:

- Dr. Bowles works for a company called BRC and has been on BRC's board of directors for approximately four years.
- During the years 1990-2005, State Farm insurance companies had paid BRC over $10 million and Ford Motor Company had paid BRC over $14 million for the services of BRC's expert witnesses.

The trial court permitted evidence to be introduced regarding the identity of Dr. Bowles's employer; the hourly rate paid to Dr. Bowles for his services; and any previous payments made to Dr. Bowles by the law firm for Boeing or Boeing's insurance company (Ace American Insurance Company). The trial court excluded evidence regarding payments made by other corporations to BRC in the past.

[8] The trial court permitted the Browns to make an offer of proof regarding the substance of testimony they sought to elicit from Dr. Bowles.

- First, they asked him about a document relating to payments made by State Farm to BRC between 1990 and 1995. He stated he was not employed by BRC during those years and had no personal knowledge regarding that information.
- Second, they asked him about a document relating to payments made by State Farm to BRC between 1995 and 2000. Dr. Bowles testified that he had no personal knowledge of that information because, while he was a consultant with BRC during those years, he was not yet on the board of

directors, so had no means of knowing whether that information was true or not.

- Third, they asked him about a document relating to payments made by Ford Motor Company to BRC between 2000 and 2004. Dr. Bowles again testified that he had no personal knowledge of that information because, while he was employed by BRC during those years, he was not yet on the board of directors, so had no means of knowing whether that information was true or not.

During the offer of proof, the Browns were able to elicit certain information that they were permitted to introduce during cross-examination—but they elected not to do so. Specifically, Dr. Bowles testified that between 1995 and 2013, he or BRC had been retained by "insurance companies, corporations and defense lawyers" to give opinions "a couple of thousand times at least." Tr. p. 401. He also testified that 75% of his work is done on behalf of defendants, while only 25% is done on behalf of plaintiffs. *Id.* at 402.

[9] The Browns argue that the evidence regarding State Farm and Ford Motor Company should have been admitted because it "show[s] the bias of Dr. Bowles to give favorable defense testimony because of the large sums paid to BRC for defense work." Appellants' Br. p. 9. We disagree. We find that this evidence is wholly irrelevant to the issue of alleged bias on the part of Dr. Bowles. Payments made to his employer—not to him or for work he had done—over the course of nearly two decades by corporations that have absolutely nothing to do with this case, and about which Dr. Bowles had zero personal knowledge, in no way suggest that Dr. Bowles is a biased witness. The trial court properly permitted questions regarding the work done by Dr.

Bowles (as opposed to his employer) in the past, Dr. Bowles's compensation, and the nature of Dr. Bowles's work. The trial court also permitted questions regarding the specific parties and law firms involved in this case. But there was no reason to admit the overly broad, irrelevant evidence regarding past, unrelated payments by unrelated parties having nothing to do with Dr. Bowles or his work. Consequently, we decline to reverse on this basis.[2]

## II. Cynthia's Inability to Work

Next, the Browns argue that the trial court should not have excluded Cynthia's testimony regarding her inability to continue to teach children with special needs as a result of her injuries. As noted above, Cynthia withdrew her claim for lost income before the trial began. She argues that this evidence relates to a loss of the enjoyment she derived from working with the children rather than the lost income.

Indiana Rule of Evidence 403 provides that a trial court may exclude relevant evidence if its probative value is substantially outweighed by a danger of, among other things, confusing the issues or misleading the jury. In this case, because Cynthia had withdrawn her claim for lost income, the trial court was concerned that this testimony would confuse the jury: "once you put in

---

[2] The Browns complain that the trial court was inconsistent by permitting Boeing to question the Browns' expert witness, Dr. Gregori, regarding the ongoing relationship between the Browns' attorneys' law firm and Dr. Gregori, pursuant to which Dr. Gregori receives almost $40,000 annually. This evidence, however, relates directly to the expert witness, a law firm involved in the case, and compensation received directly by the expert witness. As such, it is easily distinguishable from the evidence at issue with respect to Dr. Bowles.

evidence about her inability to work, then there's no instruction saying not to compensate her for it either. I'll sustain the objection." Tr. p. 243. We agree with Boeing that the trial court reasonably concluded "that the jury would be confused by the prospect that it was being encouraged to award damages for her alleged loss of ability to function as a whole person for the loss of those jobs, but was forbidden from awarding damages for the alleged loss of income that necessarily accompanied the loss of those jobs." Appellee's Br. p. 39. While we believe this to be a close call, we cannot say that the trial court erred by excluding this evidence based on concerns about jury confusion.

[12] Moreover, testimony and argument were presented to the jury highlighting Cynthia's inability to work. Specifically, Cynthia testified that she is a substitute teacher and that, following the accident, she was unable to return to work full-time. Tr. p. 244. Following a sidebar, the trial court then admonished the jury that Cynthia was not making a claim for lost wages. Cynthia then testified that "I was talking about before when I used to do special care children. I can't accept that job any longer because I can't—I can't run after them if they—if something happens. I can't help lift them." *Id.* at 247-48. Then, in the final argument to the jury, the Browns' attorney stated, "What's important is the way it's affected her. The fact that she doesn't get the joy of working with disabled children." *Id.* at 452. While Cynthia did not get to testify fully regarding her inability to work and the loss of enjoyment she suffers as a result, it is apparent that there was sufficient evidence and argument before the jury to permit the jurors to consider the issue anyway. In any event,

therefore, even if there had been error in the exclusion of this evidence, it was harmless.

[13] The judgment of the trial court is affirmed.

Bradford, J., and Altice, J., concur.